IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DONALD EUGENE GARDNER, III      *
(AIS # 283161)                  *
    Plaintiff,               *
                                *
vs.                             *   CIVIL ACTION NO. 12-00639-CG-B
                                *
SHERIFF MACK, *et al.*,         *
                                *
    Defendant.               *

**REPORT AND RECOMMENDATION**

Plaintiff, Donald Eugene Gardner, III, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a complaint seeking relief under 42 U.S.C. § 1983 (Doc. 1).  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants Dr. Charles E. Sherman, Sheriff Huey Mack, Captain Jimmie Bennett, and Nurse Carla Wasdin's Motion for Summary Judgment. (Docs. 100, 101, 102, 103, 105).  After careful consideration of Defendants' submissions, and the case file, and for the reasons stated below, the undersigned recommends that Defendants' motion be granted and that Plaintiff's action be dismissed with prejudice[1].

---

[1]  In light of the recommendation of dismissal, the undersigned further recommends that Defendants' Joint Motion to Dismiss (Doc. 110) be denied as **MOOT.**

## I.    PROCEDURAL ASPECTS OF THE CASE

Gardner filed this § 1983 action on October 10, 2012 (Doc. 1). His original complaint included multiple unrelated claims, and contained 62 pages of text and another 24 pages of attachments, which failed to make a "short and plain statement" of his claims as required by Rule 8(a) of the Federal Rules of Civil Procedure. (Doc. 49). Consequently, the Court directed Gardner to file a conforming complaint. (Id.). Gardner filed a partial amended complaint and an amended complaint (Docs. 57, 60), and on January 27, 2014, this Court granted Gardner's request to treat his partial amended complaint (Doc. 57) and his amended complaint (Doc. 60) as a single amended complaint. (Doc. 63).

In his consolidated complaint, Gardner named as Defendants Captain Bennett, Major Byrne, Sheriff Mack, Dr. Sherman, Nurse Wasdin and the Baldwin County Commissioners,[2] in their individual and official capacities.(Doc. 60). Gardner contends they denied him access to mental health care treatment during his incarceration at the Baldwin County Sheriff's Corrections Center ("BCSCC") and that "[d]ue to the denial of psychiatric care and deliberate indifference of defendants, plaintiff attempted

---

[2] Gardner's claims against Baldwin County Commissioners were previously dismissed as frivolous, and his claims against Defendant Byrne were terminated following Byrne's death. (Docs. 69, 71, 73, 74).

suicide." (Id.). Gardner seeks a Court order requiring the Defendants to implement policy that provides mental health care to those who would benefit from it, as well as declaratory relief, compensatory, punitive, and nominal damages. (Id. at 10).

In response to Gardner's consolidated complaint, Defendants filed answers, special reports and sworn declarations. (Doc. 100, 101, 102, 103). Defendants denied Gardner's allegations and plead numerous defenses including qualified, absolute, and sovereign immunity. (Id.). Upon review of Defendants' special reports, sworn declarations and supporting materials, the Court converted the answers, special reports and supporting materials into a motion for summary judgment, and notified the parties of the effects of the conversion and of their right to file briefs and materials in support of and in opposition to the motion. (Doc. 105). Gardner notified the Court that he desired to continue with this litigation, and requested another copy of Defendants' answers and special reports, and additional time to respond. (Doc. 108). The Court granted Gardner additional time to respond to Defendants' motion, and directed him to tender $8.00 (80 x .10) for another copy of Defendants' answers and special reports. (Doc. 109). Gardner has not responded to Defendants' motion, nor has he made any further contact with the Court.

## II.  STANDARD OF REVIEW

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(citation omitted)(emphasis in original)).

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical

doubt as to the material facts." <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586,
106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  On the
other hand, the evidence of the nonmovant must be
believed and all justifiable inferences must be drawn
in its favor. <u>See</u> <u>Anderson</u>, 477 U.S. at 255.

<u>ThyssenKrupp Steel USA, LLC v. United Forming, Inc.</u>, 926 F.
Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations
omitted).

Accordingly, in considering whether Defendants are entitled
to summary judgment in this case, the Court must view the facts
in the light most favorable to Gardner. <u>Comer v. City of Palm</u>
<u>Bay</u>, 265 F.3d 1186, 1192 (11th Cir. 2001) ("We view the evidence
and all factual inferences raised by it in the light most
favorable to the non-moving party, and resolve all reasonable
doubts about the facts in favor of the non-moving
party.")(citations omitted).  The requirement to view the facts
in the nonmoving party's favor extends only to "genuine"
disputes over material facts.  A genuine dispute requires more
than "some metaphysical doubt as to material facts." <u>Garczynski</u>,
573 F.3d at 1165 (internal citations omitted).  A "mere
scintilla" of evidence is insufficient; the nonmoving party must
produce substantial evidence in order to defeat a motion for
summary judgment. <u>Id.</u> In addition, "[t]here is no burden upon
the district court to distill every potential argument that
could be made based upon the materials before it on summary

judgment." <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995).

As noted *supra,* although Gardner was given an opportunity to respond to Defendants' motion, and to submit evidence to controvert Defendants' showing, he failed to do so. Thus, Defendants' factual assertions, which are supported by sworn testimony, stand wholly uncontroverted.[3] Of course, the mere failure of the non-moving party to respond does not automatically authorize the entry of summary judgment for the moving party. Rule 56 requires that the moving party still demonstrate "the absence of a genuine issue of fact." <u>Dixie Stevedores, Inc. v Marinic Maritime, Ltd.</u>, 778 F.2d 670, 673 (11th Cir. 1985). The Eleventh Circuit has made clear that "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion," and further noted the provision in Fed. R. Civ. P. 56(e) that when "'the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.'" <u>United States v. One Piece</u>

---

[3] AL Civ LR 56 (d) provides as follows:

> **(d) Effect of Uncontroverted Facts.** The Court will deem uncontroverted material facts to be admitted solely for the  purpose of deciding the motion for summary judgment.

of Property, 5800 S.W. 4th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004)(emphasis in original); see also Trustees of the Central Pension Fund of the Int'l Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc., 374 F.3d 1035, 1040 (11th Cir. 2004) (vacating and remanding the district court's grant of summary judgment, in part, "[b]ecause summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment").

### III. SUMMARY OF FACTUAL ALLEGATIONS[4]

Because Gardner has not disputed Defendants' sworn affidavits, his failure to do so will be considered an admission that no material factual dispute exists. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302-03 (11th Cir. 2009) (giving deference to interpretation of local rule which provides that if a "party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to Local Rule 56.1(B)(2), such fact is deemed

---

[4] "The 'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

admitted by the respondent."); <u>Patton v. City of Hapeville</u>, 162 F. App'x. 895, 896 (11th Cir. 2006) ("We conclude from the record, however, that the district court properly held that the defendants' statement of undisputed facts filed with their motion for summary judgment were admitted when [plaintiff] failed to respond to the statement of facts in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Northern District of Georgia.")(unpublished).[5]   The Court, having determined that Defendants' undisputed facts are deemed admitted, makes the following factual findings:

At all times relevant to the consolidated complaint, Gardner was a pretrial detainee at the BCSCC on charges of second and third degree burglary. (Docs. 60 at 4, 100-6 at 14). He was initially booked into BCSCC on June 7, 2011 and released on July 14, 2011. (Doc. 100-6 at 2).  Gardner was re-arrested on September 7, 2011, booked into BCSCC and transferred to the Alabama Department of Corrections on May 1, 2012. (<u>Id.</u> at 12, Doc. 100 at 4).  Medical screening documents completed at the time of each arrest reflect that Gardner did not report any mental health issues at the time of booking. (Doc. 100-5 at

---

[5]   "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

3,5,7).   However,  on  an  Inmate  Initial  Medical  Assessment  form,
Gardner  did  indicate  that  he  had  a  mental,  emotional,  or
psychiatric  illness  "years  ago,"  but  that  he  had  no  past/present
suicidal  thoughts  or  tendencies.  (Id. at 8).

During  the  nearly  eight  months  Gardner  spent  incarcerated
at  BCSCC,  he  submitted  sixteen  (16)  Health  Service  Request
forms.  (Doc.  103  at  2).   Several  of  his  request  forms  were
related  to  his  prison  diet  and  a  pre-existing  cyst.  (Id.).   On
February  26,  2012,  nearly  six  months  into  his  incarceration,
Gardner  made  his  first  mental  health  request.  (Doc.  100-5  at
29).   In  the  request,  Gardner  asked  to  speak  to  a  mental  health
professional  and  inquired  about  the  cost  of  the  appointment.
(Id.).   On  February  27,  2012,  Gardner  submitted  a  second  health
request  form  and  mentioned,  "feelings  of  anxiety  and  sleep  loss"
and  that  he  felt  "depressed  a  little  bit  too."  (Id. at 30).   In
Gardner's  third  mental  health  request,  submitted  on  February  29,
2012,  he  wrote,  "I  have  submitted  a  medical  request  to  see  the
psychologist  or  psychiatrist  to  talk  to  them  about  anxiety  and
moodiness  and  depression  but  to  no  avail."  (Id. at 32).   Nursing
personnel  notes  on  each  of  these  forms  reflect  that  Gardner
would  receive  the  next  available  appointment  to  see  Dr.  Sherman.
Gardner's  appointment  with  Dr.  Sherman  was  set  for  March  1,
2012.  (Doc.  103  at  3).

On March 1, 2012, Gardner refused medical treatment and signed a Medical Refusal form acknowledging his refusal. (Doc. 100-5 at 33).  On March 6, 2012, Gardner filed an Inmate Grievance form wherein he stated  "I've requested to speak with a psychiatrist or mental health professional.  I have been denied this right over and over again. Please take me to see a licensed Mental Health Professional." (Doc. 100-8 at 16).  The response to Gardner's Grievance form includes a notation that Gardner had refused to see the doctor multiple times and that his appointment with Dr. Sherman had been rescheduled. (Id.).

In Gardner's next Health Services Request form, submitted on March 14, 2012, he wrote, "[t]his is the third week I have not had an appointment to see the Mental Health Specialist/Physician/Dental Hygienist, Dr. Sherman. I need to see Dr. Sherman the psychiatrist please!!" (Doc. 100-5 at 34). Nursing personnel responded by reminding Gardner that they had attempted to bring him to the doctor twice, but he refused. (Id.).  On March 18, 2012, Gardner submitted a Health Services Request form denying that he refused medical care and requesting treatment for his physical and mental health cares needs. (Id. at 35).  Nursing personnel scheduled an appointment for Gardner to see Dr. Sherman on March 20, 2012. (Doc. 103 at 3).

On March 20, 2012, Dr. Sherman performed a mental health evaluation on Gardner. (Id.).  Gardner complained of depression,

expressed that he had a mood disorder, and that he had undergone psychiatric treatment in the past. (Id.).  Notably, Gardner specifically denied having suicidal thoughts. (Id. at 3-40).[6] Dr. Sherman deemed Gardner to be mentally stable, and recorded "questionable mood disorder" in his chart. (Doc. 103 at 26-29). Although Dr. Sherman did not perceive Gardner to have any significant symptoms of mental illness, he asked Gardner to complete a psychiatric medical release form for the purpose of future management should Gardner's psychiatric complaints continued. (Id.).  Dr. Sherman then directed the nursing staff to obtain Gardner's records after the release was signed. (Id., Doc. 100-5 at 57, 73).  The records were received by BCSCC within the next thirty (30) days. (Doc. 103 at 4).  These records reflect that Gardner's last psychiatric treatment ended in 2005, approximately seven (7) years earlier. (Doc. 103 at 26-29).

On March 21, 2012, Gardner filed an Inmate Grievance form explaining that he felt threatened by some of the staff at BCSCC. (Doc. 100-8 at 4-5).  In this grievance form, he noted that he was "not feeling depressed, doomed or thinking of hurting [him]self." (Id. at 5).  On April 13, 2012, Gardner

---

[6]  In an Inmate Grievance form filed the same day as his mental health evaluation, Gardner wrote, [t]he only question [Dr. Sherman] asked me was I going to kill myself. I told him, 'No, God would not like that' and asked him if he could help me." (Doc. 100-8 at 18).

wrote a letter to Sheriff Mack expressing multiple grievances and indicating that he had a "history longer than most mental health problems" that included "about 7 doctors, 3 institutions (mental asylums) and a list of about 40 meds." (Id. at 11-14; 100-2 at 7-8). Defendant Mack directed Investigator Griffith to investigate Gardner's allegations and on April 18, 2012, Defendants Bennett and Wasdin, along with other BCSCC staff, met with Gardner to discuss his concerns. (Docs. 100 at 6l 100-2 at 7-8). During this meeting, Gardner reiterated that although he felt depressed, he did not feel suicidal. (Id.).

Defendants contend that Gardner did not seek further mental health treatment between the April 18, 2012 meeting and April 26, 2012; however, records before the Court reflect that Gardner filed a Health Services Request on April 25, 2012. (Docs. 100 at 6, 103 at 6, 100-2 at 7-9; 100-5 at 36). On the April 25, 2012 form, Gardner wrote, "I just feel weird too like I can't really focus or think good and I don't feel like I normally do (happy)!!! Can yall please help me to see the doctor, I'll pay the money but I need to see the Physician and a Mental Health please." (Doc. 100-5 at 36). One day later, Gardner attempted suicide by tying a sheet around his neck and jumping from the second floor balcony. (Docs. 100-5 at 83, 100-10 at 3). The sheet tore and Gardner landed on the edge of a table below and bounced to the floor. (Doc. 100-5 at 83). Dr. Sherman was

notified and instructed the nursing personnel to transfer Gardner to the North Baldwin Infirmary Emergency Department for x-rays and treatment. (Docs. 100-5 at 83, 103 at 4-5; 26-29). Gardner was evaluated at North Baldwin by Walter White, D.O. and discharged the same day. (Doc. 103 at 5, 26-29). Gardner's discharge instruction summary noted that the he had a "lumbar sprain/strain," he should receive a prescription for Ibuprofen for the pain, and that he should have an appointment with Dr. Sherman within the following two days, if he was not improving. (Docs. 103 at 5, 100-5 at 97). Dr. Sherman directed that Gardner be given Ibuprofen, as prescribed. (Doc. 103 at 26-29). Additionally, "although Mr. Gardner improved upon his return," the jail personnel scheduled a follow up appointment for him to see Dr. Sherman. (Doc. 103 at 5, 26-29).

On April 27, 2012, Gardner threatened to harm himself and banged his head on the windows. (Docs. 100-2 at 4-5; 100-10 at 7). He was placed in a restraint chair "for his own safety" and "checked out by medical staff." (Id.). On April 28, 2012, Gardner again requested to see a mental health professional writing, "I have not been feeling right in my head, I even tried to kill myself on a few days ago," followed by an additional form submitted the same day stating:

> I have been denied psychiatric care and have tried to
> kill myself. No mental health [sic] has come to speak
> to me. Please help me! I also beat my head on a glass

wall and was punished in a restraint chair for 16
hours. Please help me!! I need my meds. Have a huge
psyche history.

(Doc. 100-5 at 37, 38). On April 30, 2012, nursing personnel
advised Gardner that he had not been denied medical care and
that an appointment had been scheduled for him. (Id.). However,
the following day, May 1, 2012, the Alabama Department of
Corrections transferred Gardner from BCSCC to Kilby Correctional
Facility before the appointment could occur. (Docs. 100 at 7,
100-6 at 14).

## IV. DISCUSSION

As set forth above, Gardner seeks redress for an alleged
constitutional deprivation pursuant to 42 U.S.C. § 1983. He
alleges that Defendants were deliberately indifferent to his
mental health care needs, denied and delayed his treatment,
failed to treat his mental health needs or refer him to
treatment, and maintained unconstitutional policies with regard
to mental health care. (Doc. 60 at 8). Additionally, Gardner
alleges that the denial of mental health care led him to attempt
to commit suicide, which in turn caused him serious injuries.
(Doc. 60-1 at 5). He asks this Court to order Defendants to
implement a policy that provides mental health care to those who
may benefit from it. Gardner also seeks declaratory relief,
compensatory, punitive, and nominal damages. (Doc. 60 at 10).
For the reasons set forth below, the undersigned finds that in

the face of Defendants' showing, Gardner has failed to offer facts establishing a genuine issue of material fact; therefore, it is recommended that Defendants' Motion for Summary Judgment be granted and this action be dismissed with prejudice.

**A. Immunity**

Gardner is suing Defendants in their individual and official capacities. (Id. at 1). It is well-established that, "suits against an official in his or her official capacity are suits against the entity the individual represents." Parker v. Williams, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989), *overruled on other grounds in* Turquitt v. Jefferson County, 137 F.3d 1285, (11th Cir. 1998); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)("[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); Farred v. Hicks, 915 F.2d 1530, 1532 (11th Cir. 1990). For the purposes of immunity, Defendants Sherman, Wasdin, Mack, and Bennett are state officials.

Thus, to the extent that Gardner's claims are against the Defendants in their official capacities, his claims are effectively claims against the State of Alabama. The Supreme Court has held that states and state officials are not "persons" subject to liability pursuant to 42 U.S.C. § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105

L. Ed. 2d 45 (1989). Further, pursuant to the Eleventh Amendment to the United States Constitution, a state's own citizens may not sue unless the state consents to suit or Congress acts to abrogate immunity. See Carr v. Florence, 916 F.2d 1521, 1524-25 (11th Cir. 1990). There is nothing before the Court that suggests that the State of Alabama has consented to suit or that Congress has acted to abrogate immunity. Accordingly, Defendants Sherman, Wasdin, Mack, and Bennett have absolute immunity against the claims asserted against them in their official capacities.

"Qualified immunity insulates government actors, in their individual capacities, from civil lawsuits as long as the challenged discretionary conduct does not violate clearly established federal statutory or constitutional rights." Adam v. Poag, 61 F.3d 1537, 1542 (11th Cir. 1995); see also Belcher v. City of Foley, 30 F.3d 1390, 1395 (11th Cir. 1994). In this case, it is undisputed that each Defendant was acting in accordance with their discretionary authority during all times relevant to this action. Consequently, Gardner must proffer facts that demonstrate that Defendants' conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. See Belcher, 30 F.3d at 1395; Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1997). "General propositions and abstractions do not qualify for bright

line, clearly established law. For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*. Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998)(internal citations omitted)(emphasis in original). Because the Court finds that no genuine issue of material fact exists in support of Gardner's claims of alleged constitutional violations, the Court need not decide whether Defendants are entitled to qualified immunity in their individual capacities.

**B. Denial of Mental Health Care Claim**

"[T]he minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs. Lancaster v. Monroe Cnty, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997), *overruled on other grounds in* LeFrere v. Quezada, 588 F.3d 1317 (11th Cir. 2009); see Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. Ga. 1985)("This court holds that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard

allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons."). The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

In Sims v. Mashburn, the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claims as follows, "[a]n Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994)(citing Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). To satisfy the objective component required to demonstrate the denial of medical care in violation of the Eighth Amendment, a plaintiff must demonstrate the existence of an "objectively serious medical need." Farrow

v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).   A serious
medical need is "'one that has been diagnosed by a physician as
mandating treatment or one that is so obvious that even a lay
person would easily recognize the necessity for a doctor's
attention.'" Id. (citing Hill v. DeKalb Reg'l Youth Det. Ctr.,
40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part by* Hope
v. Pelzer, 536 U.S. 730, 739, n.9, 122 S. Ct. 2508, 153 L. Ed.
2d 666 (2002)). "In either of these situations, the medical need
must be one that, if left unattended, poses a substantial risk
of serious harm." Id. (citations and quotation marks omitted).

    In order to meet the subjective requirement of an Eighth
Amendment denial of medical care claim, a plaintiff must
demonstrate "deliberate indifference" to a serious medical need.
Farrow, 320 F.3d at 1243.   Deliberate indifference entails more
than mere negligence. Estelle, 429 U.S. at 106; Farmer v.
Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811
(1994).   The Supreme Court explained that a prison official
cannot be found deliberately indifferent under the Eighth
Amendment "unless the official *knows of* and *disregards* an
excessive risk to inmate health or safety; the official must
both be *aware of facts* from which the inference could be drawn
that a substantial risk of serious harm exists, and he must also
*draw the inference*." Farmer, 511 U.S. at 837 (emphasis added).
However, "an official's failure to alleviate a significant risk

that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838.  Therefore, under Farmer and Estelle, "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow, 320 F.3d at 1245 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

Assuming, without deciding, that Gardner's mental health needs were a serious medical condition requiring medical treatment, thus satisfying the objective component of his Eighth Amendment claim, he must nonetheless establish the subjective component of his claim.  He has failed to do so.

**B. Dr. Sherman and Nurse Wasdin**

Gardner alleges that during his incarceration at BCSCC, Defendants Dr. Sherman and Nurse Wasdin denied him access to mental health treatment, despite knowing that he was in need of care. (Doc. 60 at 5-6, 8).  He also claims that Nurse Wasdin violated his constitutional rights through "deliberate indifference, failure to act or to remedy plaintiff's problem, making medical decisions based on non-medical factors, allowing plaintiff to suffer by 'NOT' providing treatment after he attempted suicide and banged his head against a glass window." (Id. at 5-6).  Gardner also alleges that Nurse Wasdin called him

a baby, laughed at him, told him to "be a man and tough it out," and told him "since he did not have a Mental Health history from Baldwin County he could not be seen by Mental Health." (Docs. 60 at 6, 60-1 at 8).   However, the record does not support Gardner's contentions.   Courts have held that inmates are:

> Entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.  The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable . . . Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.), *cert. denied sub nom.*, Thomas v. Cannon, 419 U.S. 879, 42 L. Ed. 2d 119, 95 S. Ct. 143 (1974); Jones v. Lockhart, 484 F.2d 1192 1194 (8th Cir. 1973); Corby v. Conboy, 457 F.2d 251, 254 (2nd Cir. 1972).  For a constitutional tort to arise and for a cause of action to be stated under § 1983, the complainant must allege deliberate indifference to his continued health and well-being.

Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

The record evidence reflects that after refusing treatment from Dr. Sherman multiple times, Gardner eventually met with Dr. Sherman for a mental health evaluation on March 20, 2012. (Docs. 100-8 at 16, 103 at 3, 26-29).  During the evaluation, Gardner

complained of having depression and a "mood disorder." (Doc. 103 at 3-4, 26-29). Gardner specifically denied having suicidal thoughts and mentioned that he had previously undergone psychiatric treatment. (Id.). Dr. Sherman did not detect any significant signs of mental illness during the evaluation. (Id.). However, he asked Gardner to complete a psychiatric medical release form and directed the nursing personnel to secure his psychiatric records that same day, for the purposes of future management if Gardner's psychiatric complaints persisted. (Id.).

When Dr. Sherman received Gardner's records, nothing in the records revealed that Gardner might harm himself or that he was in need of mental health care. (Id.). The last treatment shown in the records was related to treatment of Attention-Deficit Hyperactivity Disorder ("ADHD") and showed that Gardner's last treatment was from nearly seven years prior, in 2005. (Id.). Further, at that point, Gardner gave no indication that he was suicidal; in fact, he denied having suicidal thoughts on more than one occasion. (Id.). Thus, Gardner has not provided evidence that Dr. Sherman knew of a substantial risk of harm that Plaintiff would harm himself nor has he provided evidence that Dr. Sherman disregarded such a risk.

Similarly, Nurse Wasdin responded to all of Gardner's requests and grievances and scheduled appointments with Dr.

Sherman for Gardner whenever necessary. (Doc. 100 at 19).   She has submitted an uncontroverted declaration denying that she called Gardner a baby, telling him to be a man and tough it out, or laughing at him. (Doc. 100-4 at 5).   Further, although Gardner alleges that Nurse Wasdin told him he could not see a mental health care professional because he did not already have a mental health history in Baldwin County, Nurse Wasdin contends that this conversation was only in regards to a particular agency, Baldwin County Mental Health Center. (Id.).  Gardner has not demonstrated that Nurse Wasdin failed to follow any of Dr. Sherman's instructions, or that Wasdin knew of any risk of serious harm to Gardner, and disregarded such risk.

The uncontroverted evidence also reflects that before Gardner's attempted suicide, neither Dr. Sherman nor Nurse Wasdin had reason to believe that he would attempt to harm himself. Further, after said attempt, Gardner was transported to the hospital immediately and prescribed medicine for his pain. (Doc. 103 at 4).   Additionally, Dr. Sherman scheduled a follow-up appointment with Gardner.[7] (Id. at 5).   However, Gardner was

---

[7] Even if Gardner contends that his constitutional rights were violated by a delay in treatment, because Dr. Sherman did not see him immediately following his suicide attempt, this claim must also fail. "[D]elay in access to medical attention can violate the Eighth Amendment . . . but only if the condition is life- threatening or will obviously deteriorate if not quickly treated, the delay actually worsens the medical condition, and the delay is unjustified. Bowens v. City of

placed into the custody of the Department of Corrections and transferred to Kilby Prison before the appointment took place. (Id.). Accordingly, Dr. Sherman and Nurse Wasdin are entitled to summary judgment as the uncontroverted evidence refutes Gardner's claim that Dr. Sherman and Nurse Wasdin were deliberately indifferent to his mental health care needs. Thus, Gardner's claims against them are due to be dismissed as a matter of law.

### C. Sheriff Mack and Captain Bennett

Gardner claims that Defendant Sheriff Mack violated his constitutional rights through "inadequate policies and/or customs, deliberate indifference, failure to provide access to mental health treatment, failure to treat plaintiff or refer to treatment." (Doc. 60 at 5). He also claims that Defendant Captain Bennett violated his constitutional rights through "deliberate indifference, failure to act or to remedy, allowing plaintiff to suffer, making medical decisions based on non-medical factors, and punishment by restraint chair for over 10

---

Atmore, 171 F. Supp. 2d 1244, 1258 (S.D. Ala. Mar. 27, 2001) (citing Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1187-89 (11th Cir. 1994). The evidence reflects that Gardner received medical treatment immediately following his suicide attempt, and while he was scheduled to see Dr. Sherman mere days after the attempt, he was transferred from the facility before the appointment could take place. There is no evidence before the Court that suggests that Gardner's condition deteriorated in any way following the medical treatment he received immediately after his suicide attempt.

hours . . . after plaintiff bashed his head against the glass window/wall." (Doc. 60 at 6-7).[8]  In order to state a claim upon which relief can be granted in a § 1983 action, Gardner must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights. See Frankum v. Chapman, 2009 WL 1118875, *3 (S.D. Ala. Apr. 24, 2009)(unpublished); Trotter v. Correctional Medical Services, Inc., 2008 WL 2225696, *9 (S.D. Ala. May 29, 2008)(unpublished). Liability for an alleged constitutional violation cannot be established on the basis of *respondeat superior*.  See Edwards v. Alabama Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala Jan. 14, 2000)("A theory of *respondeat superior* is not sufficient to support their § 1983 claim.")(unpublished). "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal a connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  "The necessary causal connection can be established 'when a history of widespread abuse puts the

---

[8] Gardner acknowledges that he was placed in the restraint chair because he was threatening to harm himself and banging his head on the cell door.  His placement in the restraint chair was not for punishment but was done in an effort to prevent him from harming himself. (Docs. 100-5 at 37, 39, 100-10 at 7).

responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Id. (citations omitted).

"Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully and failed to stop them from doing so.'" Id. (citations omitted). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id. (citations omitted). In such instances, Plaintiff must show that the policy or custom was "the 'moving force [behind] the constitutional violation.'" Pinkney v. Davis, 952 F. Supp. 1561, 1569 (M.D. Ala. Jan 15, 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendants] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." Id. (citations omitted).

The evidence before the Court is uncontroverted that neither Sheriff Mack nor Captain Bennett directly participated in Gardner's medical care. Further, Gardner has not provided identified any policy or custom involving resulting in improper

medical care to inmates, nor has he produced evidence of the widespread denial of mental health care to inmates.  In fact, the record reflects that Gardner refused two mental health care appointments, received a mental health evaluation, and was scheduled for a follow-up appointment prior to his transfer. (Doc. 100 at 5-7; Doc. 100-2).  Additionally, when Gardner voiced his concerns to Defendant Mack, Defendant Mack ordered an investigation into Gardner's allegations and Defendants Wasdin and Bennett (along with other BCSCC staff) met with Gardner to discuss his concerns. (Id.).  Gardner has failed to show a causal connection between actions by Defendants Mack and Bennett and any alleged constitutional violation.  He has also failed to demonstrate that any policy of Defendants resulted in him and other inmates being denied access to mental health care. Further, Gardner has failed to show that Defendants Mack and Bennett were deliberately indifferent to his mental health care needs.  Accordingly, Defendants Mack and Bennett are entitled to summary judgment and Gardner's claims against them must be dismissed as a matter of law.

### V.   Conclusion

Viewing the uncontroverted facts in the light most favorable to Gardner for the purposes of Defendants' Motion for Summary Judgment, the Court finds that Gardner has failed to create a genuine issue of material fact with respect to his

claim for violation of his constitutional rights. Accordingly, his claims are due to be dismissed as a matter of law.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **8th** day of **September, 2015.**

                    ___/s/ SONJA F. BIVINS___
                    **UNITED STATES MAGISTRATE JUDGE**